Rhoda Sue COSTLEY,
Petitioner-Respondent,

v.

Harold Thomas COSTLEY, Sr.,
Respondent-Appellant.

No. 14550.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 11, 1986.

Rehearing Denied Oct. 3, 1986.

Albert D. Johnson, Carthage, for respondent-appellant.

William C. McCaffree, Nevada, for petitioner-respondent.

Before PREWITT, C.J., HOGAN, P.J., and MAUS and CROW, JJ.

MAUS, Judge.

In this dissolution action, four children were placed in the custody of the respondent wife. She was awarded child support in the total amount of $185 per month. She was awarded no maintenance. The separate property was set apart and mari-

tal property was divided. The 40–acre homestead was awarded to the wife. Among other provisions, the decree required the husband to substitute collateral or otherwise obtain the release of the 40–acre homestead from the lien of existing deeds of trust. The requirements of the decree were made a charge against the real and personal property of each party until fully performed. On appeal, the husband presents four points concerning the financial aspects of the dissolution decree.

The controversies between the parties concerning the amounts of indebtedness and the values of the assets are not of significance. Using the net value of some assets, the following is a concise statement of the consequences of the decree.

Value of property and indebtedness awarded to:

|  | Husband | Wife |
|---|---|---|
| Separate Property: |  |  |
| Real | $44,000.00 | $ None |
| Personal | 200.00 | 1,175.00 |
|  | $44,200.00 | $ 1,175.00 |
| Marital Property: |  |  |
| Real | $58,300.00 | $30,000.00 |
| Tangible Personal | 34,129.00 | 13,265.00 |
| Intangible Personal | 5,144.50 | 1,974.50 |
|  | $97,573.50 | $45,239.50 |
| Indebtedness: | −88,712.00 | −16,928.00 |
| Net Marital Property: | $ 8,861.50 | $28,311.50 |

The separate real property set off to the husband was 80 acres devised to him in his grandfather Costley's will executed in December, 1977. The marital real property awarded to him was 106 acres purchased by the parties. The marital real property awarded the wife was a homestead of 40 acres purchased by the parties. The marital tangible personal property awarded to the husband consisted of household goods, motor vehicles and, primarily, farm machinery. The marital tangible personal property awarded the wife consisted of household goods, motor vehicles and office equipment. The principal items of indebtedness were the following:

$5,405.00 to the Bank of Sheldon secured by the 40 acres.

$42,921.00 to the Federal Land Bank secured by the 40 acres and 106 acres.

$25,621.00 to the Farmers Home Administration (FmHA) secured by the 40 acres and the 106 acres.

$22,746.00 to the FmHA secured by the 40 acres and the 106 acres.

The decree required the wife to pay the $5,405 to the Bank of Sheldon and one half of the $22,746 to FmHA and to hold the husband harmless in respect to that indebtedness. In the same manner, the decree required the husband to pay the $42,921 to the Federal Land Bank, the $25,621 to the FmHA and one half of the $22,746 to FmHA and to hold the wife harmless in respect to that indebtedness. In addition, as noted, the decree provided the husband was to substitute collateral or otherwise obtain the release of the 40–acre tract from the deeds of trust securing the indebtedness to the Federal Land Bank and the indebtedness of $25,621 to the FmHA The decree further provided if the wife desired to sell the 40 acres, upon 120–days' notice, the husband would substitute collateral for his one half of the $22,746 indebtedness to FmHA or pay that one half. Also as noted, the decree made the obligations of the parties a charge against the real and personal property of each party until fully performed. The decree specifically provided the 80 acres set apart to the husband as his separate property was subject to that charge.

The husband's first point is that the trial court abused its discretion in awarding the wife 77% of the marital assets and only 23% to the husband. To support this point he contrasts husband's contribution of $31,107 of separate funds to the wife's contribution of $2,200 of separate funds. Also, without a factual basis, he quarrels with the trial court's finding of "no marital misconduct of any magnitude committed by either party." To establish his poor economic circumstances, he cites his unsuccessful farming operations and income of $368 per month as a school bus driver. He contrasts this with his summary of the wife's activities and income.

The Appellee was making at least $300.00 a month from employment with

Beisley [sic] Oil Company, and earned an additional $35.00 a month from church work. She also earned $1200.00 a year as township tax collector, approximately $2500.00 a year through her tax return business, and she also earned some money during the summer when she and the children would mow yards.

An extended discussion of the evidence that supports the division of the marital property is not merited. It is sufficient to note one of the statutory factors ·is the "economic circumstances of each spouse, ... including the desirability of awarding the family home ... to the spouse having custody of any children." § 452.330.1(3), RSMo Cum.Supp.1984. Those economic circumstances also include the responsibility of the wife to make the mortgage payments required by the decree and to provide for herself and four minor children. Under the terms of the decree she is to do so by her own effort and child support of $185 per month. The basis for the division of the marital property is clearly summarized by the following extract from the decree.

Of overwhelming concern to the Court are the needs of the four children, Harold, age 12, Mary Ann, age 10, Martha, age 8, and David, age 5. Their parents have modest marital assets. Their parents have modest earning capacity. The evidence was overwhelming and abundantly clear that the mother is providing household and motherly services as well as working more than full time in numerous jobs—bookkeeper at Beisly Oil [sic], filling out simple tax returns, yard mowing, completion of a substantial portion of husband's farm chores, and driving a substantial share of husband's bus route—yet producing only modest income. Her efforts could hardly be enlarged. Husband's earning capacity is nominal, his work history reflects constant reliance on wife to assist with or complete work he undertakes, and the Court concludes husband has not shown a capacity to provide support approaching the reasonable needs of the children. The dissolution will undoubtedly reduce

or terminate wife's assistance to husband and further jeopardize the children's hope for assistance from him. The Court concludes the children's basic need for food, clothing, shelter, medical attention and a reasonable education requires the Court to place a sufficient amount of the modest accumulation of marital assets in the hands of the mother to provide for the children's future needs.

The decree concluded:

In the special circumstances of this case the Court does not believe it is constrained to adhere to percentage criteria taken from other cases in other circumstances unconcerned with the problems and needs here presented.

■ The evidence establishes the able trial court acted with a sound exercise of its discretion. The fact the just division of marital property places a heavy obligation upon the husband does not misapply the law. *Geldmeier v. Geldmeier,* 669 S.W.2d 33 (Mo.App.1984); *In Re Marriage of Kueber,* 599 S.W.2d 259 (Mo.App.1980). The husband's first point is denied.

The husband's second point is the trial court erred in ordering him to obtain a substitute for the 40–acre tract as collateral for the two loans or otherwise obtain the release of that tract as security for those loans. He makes the same contention in respect of a similar requirement pertaining to one half of the $22,746 FmHA loan.

The obvious purpose of these provisions was to free the homestead from liens securing the payment of indebtedness assigned for payment by the husband. It could have been contemplated the 80 acres would be so substituted. However, the husband argues the substitution of collateral is dependent upon the accession of the lender.

■ It is the general rule that a court should not order a person to do that which he has no power to do. *Ex Parte Fuller,* 330 Mo. 371, 50 S.W.2d 654 (banc 1932). Also see 42 Am.Jur.2d Injunctions § 37 (1969). That rule has been held applicable

to bar an order that a husband convey the marital home to the wife when legal title was vested in the husband's parents. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo.App.1979). It is applicable to the decree in question. Cf. *In Re Marriage of Paul*, 704 S.W.2d 278 (Mo.App.1986), in which the decree provided for the execution of a deed of trust by a corporation wholly owned and controlled by the husband.

Nor, in this instance, is that order made proper because the husband has an alternative means of performance by payment of the indebtedness secured by the 40 acres. That alternative would compel the husband to immediately liquidate his farming assets. Considering the relevant factors, that consequence is too harsh. The husband's objection to those consequences, as distinguished from the purpose of those portions of the decree, has merit.

The husband's next point is that the trial court erred in subjecting his separate property to a lien to secure payment of the marital indebtedness assigned to him. In support of this point, the husband directly or implicitly presents three issues.

The first issue is whether or not the trial court had power to assign marital indebtedness for payment by one spouse. A consideration of that issue presupposes that such an assignment does not per se affect the rights of creditors. Such consideration is likewise limited to debts that are in fact "marital debts." See Golden, Equitable Distribution of Property § 6.31 (1983).

It has been observed, "The courts are divided as to whether and how marital debts must be considered in the equitable distribution of property." Golden, Equitable Distribution of Property § 6.31, supra. One view is "[t]he allocation of marital debts between the parties is as integral a part of the property division as is the apportionment of marital assets. We therefore conclude that the allocation of marital debts inheres in the property division." *In Re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980).

It has been observed, "Section 452.330 requires only that the court 'divide the marital property.' A debt owed by the spouses does not constitute 'property' owned by them." *N.J.W. v. W.E.W.*, 584 S.W.2d 148, 151 (Mo.App.1979). Also see *In Re Marriage of Kluba*, 647 S.W.2d 920 (Mo.App.1983); *Hurtgen v. Hurtgen*, 635 S.W.2d 69 (Mo.App.1982); *Waitsman v. Waitsman*, 599 S.W.2d 42 (Mo.App.1980). For this reason it has been held that it is not error for the trial court to fail to so assign marital indebtedness. *N.J.W. v. W.E.W.*, supra.

However, no Missouri case has been found that holds that in a dissolution proceeding the court does not have power to assign marital indebtedness for payment by one spouse. It has been expressly declared to the contrary. "A court has the authority to distribute debts in the sense that one party may be assigned the primary duty to pay a debt and to hold the other harmless thereon." *Alvino v. Alvino*, 659 S.W.2d 266, 272 (Mo.App.1983). Also see *Gonzalez v. Gonzalez*, 689 S.W.2d 383 (Mo.App.1985); *N.J.W. v. W.E.W.*, supra. Many other cases have without discussion approved such procedure. *Colabianchi v. Colabianchi*, 646 S.W.2d 61 (Mo. banc 1983); *Hilton v. Hilton*, 676 S.W.2d 918 (Mo.App.1984); *In Re Marriage of Harrison*, 657 S.W.2d 366 (Mo.App.1983); *Gross v. Gross*, 557 S.W.2d 448 (Mo.App. 1977).

██ Where determined to be necessary by reason of extraordinary economic circumstances, such assignment has been approved even though the amount of indebtedness assigned to a spouse exceeded the value of marital property apportioned to that spouse. *Geldmeier v. Geldmeier*, supra; *Jobe v. Jobe*, 708 S.W.2d 322 (Mo.App. 1986). Also see *In Re Marriage of McCartney*, 116 Ill.App.3d 512, 72 Ill.Dec. 182, 452 N.E.2d 114 (1983). However, the propriety of an assignment to such an extent has been questioned. Concurring opinion in *Geldmeier v. Geldmeier*, supra. Also see *Scott v. Scott*, 645 S.W.2d 193 (Mo.App.1982); *Welch v. Welch*, 694 S.W.2d 374 (Tex.App. 14 Dist.1985). That question does not arise in this case as the

debts assigned to the husband do not exceed the value of the marital property assigned to him. The trial court had the power to so assign the marital indebtedness.

The second issue is whether or not the trial court had the power to make the payment of the indebtedness so assigned a lien upon the marital property apportioned to the husband. No statute expressly authorizes such procedure. However, that does not negate the existence of an inherent power. The scope of the power of the court in a dissolution action has received the following expressions. "[T]his proceeding, nonetheless, partakes of the nature of a suit in equity and the trial court is clothed with broad equitable powers." *McCully v. McCully*, 550 S.W.2d 911, 914 (Mo.App.1977). "Third, in dividing the marital property, the trial court is unfettered by 'rigid methods or mechanics.' " *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo. App.1981). "[T]he power given the trial court by § 452.330 (par. 1) 'to divide the marital property' includes the powers necessary to render effective the power to divide." *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App.1975). Such power has been held to include an order to pay a sum of money in the division of marital property, *Claunch v. Claunch*, supra, or to execute deeds. *Berry v. Berry*, 620 S.W.2d 456 (Mo.App.1981). It has also been declared, "The powers of the court under § 452.330 are broad—it may not only order a sale, but can decree an exchange or conveyance, 'or such other dispositions—either between the spouses or with a third person.' " *In Re Marriage of Goodding*, 677 S.W.2d 332, 339 (Mo.App.1984).

The power of the court in an equitable proceeding has historically included the imposition of a lien. 27 Am.Jur.2d Equity § 103 (1966).

The power to impose such equitable liens to secure both property settlements and alimony payments has been recognized by many jurisdictions. *Lipka v. Lipka*, 60 Cal.2d 472, 35 Cal.Rptr. 71, 386 P.2d 671 (1963); *Peterson v. Peterson*, 94 Idaho 187, 484 P.2d 736 (1971); *Leone v. Leone*, 39 Ill.App.3d 547, 350 N.E.2d 545 (1976); *Kobriger v. Winter*, 263 N.W.2d 892 (Iowa 1978); *Luedecke v. Luedecke*, 195 Iowa 507, 192 N.W. 515 (1923); *Blitzer v. Blitzer*, 361 Mass. 780, 282 N.E.2d 918 (1972); *In re Marriage of Jackson*, 506 S.W.2d 261 (Tex.Civ.App.1974); *Mea v. Mea*, 464 S.W.2d 201 (Tex.Civ.App. 1971).

*Northern Commercial Co. v. E.J. Hermann Co.*, 22 Wash.App. 963, 593 P.2d 1332, 1335 (1979). Also see *Robinson v. Robinson*, 381 So.2d 637 (Ala.Civ.App. 1980); *Sisco v. New Jersey Bank*, 158 N.J. Super. 111, 385 A.2d 890 (1978); *Thom v. Liard*, 205 Or. 465, 289 P.2d 418 (1955). Many cases in this state, without discussion, have recognized the existence of such a power. *Oldfield v. Oldfield*, 666 S.W.2d 17 (Mo.App.1984); *Atwood v. Atwood*, 664 S.W.2d 673 (Mo.App.1984); *Klinge v. Klinge*, 639 S.W.2d 846 (Mo.App.1982); *Hurtgen v. Hurtgen*, supra. Such remedy is to be exercised with caution. See *In Re Marriage of Hunter*, 196 Mont. 235, 639 P.2d 489 (1982). "Care must be used in issuing in personam orders of the sort involved here since they may in some circumstances entail oppressive consequences for the party subject to them." *Baker v. Baker*, 444 A.2d 982, 986 (Me.1982). This court holds that in a dissolution proceeding, the trial court may secure the performance of an act or the future payment of money, lawfully ordered in the disposition of marital property, by the imposition of a lien upon marital property distributed to a spouse. Those interested in the priority of the liens discussed herein may consider § 511.320, RSMo 1978; § 527.260, RSMo 1978; *Head v. Crawford*, 156 Cal.App.3d 11, 202 Cal.Rptr. 534 (1984); *Clopine v. Kemper*, 140 Col. 360, 344 P.2d 451 (banc 1959); *Joneson v. Joneson*, 25 Ia. 825, 102 N.W.2d 911 (1960); *Jones v. Jones*, 249 Miss. 322, 161 So.2d 640 (1964); *Missouri State Life Ins. Co. v. Russ*, 214 S.W. 860 (Mo.1919).

The third issue presented by this point is whether or not such a lien may be im-

pressed upon the husband's separate property. Section 452.330.1, RSMo Cum.Supp. 1984, in part provides: "[T]he court shall set apart to each spouse his property...." The husband contends this provision circumscribes the power of the trial court to deal with the separate property of a spouse.

The trial court may not apportion separate property. *Weast v. Weast*, 682 S.W.2d 86 (Mo.App.1984). However, the lack of that power does not bar the court from otherwise dealing with separate property as an incident to its authorized orders. Separate property is within the jurisdiction of the court. Decisions in this state have approved orders imposing a lien thereon as a result of enhancement of separate property by the expenditure of marital funds. See *Stapleton v. Stapleton*, 637 S.W.2d 210 (Mo.App.1982). An order granting a spouse the right to live in a residence, the separate property of the other spouse, has been approved. *Dunavant v. Dunavant*, 670 S.W.2d 524 (Mo.App.1984). In the latter case the court said, "[t]he trial court has not divided the separate property of the husband. It has fully recognized his title to that property. It has restricted his use of that property until he pays the debt owed by him to the wife." *Id.* at 525.

In other states the imposition of such a lien has been approved. "The trial court is vested with authority under the laws of this state to fix a lien on separate estates for the discharge of payments to the former spouse by the owner of the property." *Buchan v. Buchan*, 592 S.W.2d 367, 371 (Tex.Civ.App.1979). Also see *Baker v. Baker*, supra. A judgment against a spouse for the immediate payment of a fixed sum of money constitutes a lien against separate property. See § 511.350, RSMo Cum.Supp.1984; § 511.440, RSMo 1978; § 452.080, RSMo 1978; *Thomas v. Shoots*, 651 S.W.2d 663 (Mo.App.1983); *Gunkel v. Gunkel*, 633 S.W.2d 108 (Mo. App.1982).

■ Considering all relevant factors, the trial court determined a just division of the marital property could be had only by the imposition of a lien upon the separate property of the husband. That determination is supported by the evidence. In such circumstances, the imposition of a lien of the nature previously discussed may be imposed upon the separate property of a spouse. The husband's third point is denied.

■ By his last point the husband contends the trial court erred in awarding the wife attorney's fees of $1,700. The award of attorney's fees, after considering all relevant factors, is within the sound discretion of the trial court. § 452.355, RSMo 1978. The factors which establish the husband's last point has no merit have been discussed. Cf. *In Re Marriage of Dusing*, 654 S.W.2d 938 (Mo.App.1983).

The decree of the trial court is modified by deleting therefrom the requirement that the husband substitute collateral or otherwise obtain the release of the 40–acre tract from the deeds of trust securing the indebtedness to the Federal Land Bank and $25,621 to FmHA  Also deleted is the provision that if the wife desires to sell the 40 acres, upon 120–days' notice, the husband will substitute collateral for his one half of the $22,746 indebtedness to FmHA or pay that one half. As so modified, the decree of the trial court is affirmed.