William Anthony
**FAIRCHILD, Appellant,**

v.

**Bonnie Jo FAIRCHILD, Respondent.**

**No. WD 38863.**

Missouri Court of Appeals,
Western District.

Feb. 9, 1988.

As Modified March 29, 1988.

Respondent Rehearing Denied
March 29, 1988.

Appellant Motion for Rehearing and/or
Transfer to Supreme Court Denied
March 29, 1988.

Robert H. Shaw, Platte City, for appellant.

Charlotte B. Thayer, Anita I. Rodarte, Kansas City, for respondent.

Before KENNEDY, C.J., and TURNAGE and GAITAN, JJ.

KENNEDY, Chief Judge.

Both husband and wife appeal from different provisions of a legal separation decree, wife, Bonnie from the property division provisions thereof and husband Bill from the award of maintenance to the wife.

Bill and Bonnie were married in 1962. Bill was in the military service, stationed in England, and Bonnie joined him there. After Bill's discharge from military service in July, 1964, they moved to Jefferson City, Missouri. Bill attended Lincoln University for three years. For the next three years he was employed at Hallmark Cards in Kansas City, then in the fall of 1970 he entered dental school. After three and a half years he was graduated from dental school and joined the United States Army as a captain in January, 1974. He served in the United States Army until August, 1985, when he left the active military service with the rank of lieutenant colonel. During this period of his military service, beginning in 1977, he took two years of advanced training in pedodontics in Kansas City, completing his work in that field in May of 1979. He was transferred to Ft. Leavenworth in 1982, and the family since that time has resided in Platte County.

There were two children born of the marriage, Stacia, who was born December 30, 1969, and Sarah, who was born June 7, 1979.

For most of the time of their marriage Bonnie worked for wages. She had been trained as an X-ray technician before their marriage and was employed in that field until, during the time Bill was attending dental school, she attended and graduated from nursing school. Since that time she has worked as a neonatal care nurse.

Bill left the military in August, 1985, to work for ARAMCO in Saudi Arabia. A few months later, before Bonnie joined him there, he instituted this suit for dissolution January 31, 1986. Bonnie countered with a petition for a decree of legal separation. The decree of legal separation was entered by the court under date of October 6, 1986.

■ Bonnie complains on appeal of the court's order to sell the parties' residence and claims that the order was an abuse of discretion under § 452.330.1, RSMo 1986.

We believe the court acted within his allowable discretion in ordering the sale of the house. *P.L.K. v. R.J.K.* 682 S.W.2d 486, 489 (Mo.App.1984). It is true that our decisions have encouraged the award of the family residence to a spouse having custody of young children, going so far in one case as to reverse a decision of the trial court ordering the sale of the family residence. *In re Marriage of Goodding*, 677 S.W.2d 332 (Mo.App.1984).

Bonnie under the decree of the court will not have custody of the older daughter, Stacia. She will have custody only of the younger child, Sarah. Stacia's custody was awarded to Bill, although she will be residing with a paternal uncle and his wife.

There is evidence from which the court could believe that the residence is not the most suitable for Bonnie and Sarah. It is larger than they need—it accommodated a family of four before Bill left for Saudi Arabia. The mortgage payments, maintenance and utilities will exceed $1,200 per month. It is removed from Bonnie's place of employment and Sarah's school by a considerable distance, which increases commuting time and expense. (Bonnie's place of employment, St. Luke's Hospital in Kansas City, and Sarah's school, Notre Dame de Sion, in the southern part of Kansas

City, lie in the same direction from the Platte County residence).

There is also the policy, endorsed by many of our cases, which encourages the final surgical division of the parties' property, so that there is no continuing co-ownership of property to cause conflict. *See Fields v. Fields*, 584 S.W.2d 163, 166 (Mo. App.1979).

This case is unlike *In re Goodding*, supra, where the residence was practically the only marital asset of the parties. Bonnie has not cited to us any other case which has reversed a trial court's decision to order a residence sold. She has cited several cases which affirm an order of the trial court awarding the residence or the right to live therein to a spouse having custody of minor children, but that is a very different thing than reversing the trial court's decision ordering the residence sold.

■ For her second point on appeal, Bonnie complains of the court's holding Bill's non-vested military pension to be non-marital property, and awarding the same to him as his sole and separate property. Bill has served 15 years in the United States Military Service, 13 years of which were during the marriage of the parties. He continues to accumulate military time in the reserve service. After 20 years military service, he will be entitled to a military pension. The court's finding on this point was:

> It has been the undisputed testimony that Petitioner has no right to receive any military benefits for retirement in the future without first serving additional service in the active or reserve forces. For this reason, it is the finding of this Court that the Petitioner's retirement benefits are non-vested and non-matured. As such, Petitioner's potential rights to future military retirements are too speculative to be marital property.

The fact that entitlement to retirement benefits depend upon contingencies and by their nature are speculative—both as to future entitlement thereto, and as to amounts—does not deprive them of their character as marital property. *Hagerman v. Hagerman*, 682 S.W.2d 28 (Mo.App. 1984).

The accrual of this pension provided additional compensation for Bill's service during the 13 years of their marriage, and Bonnie should not be excluded therefrom. Her own opportunities to accumulate a pension or other funds to assist in retirement years are quite limited. It is scarcely just that Bill should have all the benefit of any military pension. The decree should be modified to provide for the payment to Bonnie of a portion of any military pension paid to Bill.

In order for the secretary of the retirement plan to pay Bonnie's share of the pension directly to her, under 10 U.S.C. § 1408(d)(1) (1982), it is necessary that the amount be "expressed in dollars or as a percentage of disposable retired or retainer pay", 10 U.S.C. § 1408(a)(2)(C) (1982). The percentage payable to Bonnie will be fixed as follows: One-half of $^{13}/_{20}$ths of any such retirement pay which may become payable to Bill, or 32.5 percent of the whole.

■ Bill claims on appeal that the court erred in awarding Bonnie $1,000 per month maintenance.

He says that he should not be required to pay any maintenance, or alternatively that $1,000 per month is excessive. He argues that Bonnie could make wages of more than $2,000 per month in a full-time job as a registered nurse and that this would be sufficient for her reasonable needs. The assessment of $1,000 per month maintenance he says ignores the statutory factor of her ability to support herself, § 452.335.1(2), RSMo 1986. "Supporting herself", however, does not mean only the ability to purchase the necessaries of life. The term is to be looked at in the light of the standard of living of the couple during marriage, § 452.335.2(3), RSMo (1986). A factor in a family standard of living is the necessity, or absence of necessity for the mother of a young child or children to work full time and to leave to others the care, nurture and training of the children for the larger part of their waking hours. Where the husband has a substantial income, the family can indulge the luxury, if they choose, of the mother's not working out-

side the home, or of her working only part-time. The additional time that she is able to spend in the child's upbringing will not only save child care expense, but will redound to the child's good—and the child's good is a mutual goal and purpose of mother and father. Families of more limited income than the Fairchilds often cannot indulge this luxury; it is necessary for mothers to work 40 hours per week for wages. Where the standard of living of the couple during marriage and the income of the husband and father do not allow the wife and mother not to work for wages, or allow her to work only part-time, then our cases indicate that the wife must earn all she can and the husband is to that extent relieved of maintenance and child support.

How was it—how is it—with the Fairchild family? Bonnie has chosen to work approximately half-time at her vocation of registered nurse for which she earns take-home pay of $612.73. We rather think she has worked on a half-time schedule since the Ft. Leavenworth transfer in 1982. She explains that this gives her more time for Sarah.

Is this position justified by the family's previous standard of living, and by Bill's income? We conclude that the evidence supports an affirmative answer. Bill testified he protested Bonnie's working after his transfer to Ft. Leavenworth and their move to Platte County; he wanted her to spend more time with him and their children. Bill's monthly earnings after payroll deductions are $7,284.24 per month. After payment to Bonnie of $1,750 for maintenance and for Sarah's child support and assuming that Stacia's support costs him an additional $750, Bill will still have $4,784.24 per month for his personal needs. This sum is entirely sufficient under the evidence.

If however Bonnie is expected to work full time, as Bill proposes, it is reasonable to estimate that her monthly earnings after payroll deductions would double, that is, from $612.73 to $1,225.46. Perhaps it would be as much as $1,500 per month; there is no evidence what her earnings would be after payroll deductions. The addition of $1,000 maintenance would give her $2,225.46–$2,500.00 per month for her personal living expenses, which is within what the evidence shows her anticipated expenses to be. (No consideration has been given to the amount of income tax on the maintenance, nor the amount of income tax saved by Bill.) The court found specifically that "Respondent is capable of earning in excess of $10.00 per hour and is capable of full-time employment, but that said amount would not be sufficient to provide for the Respondent's needs." This finding is fully justified by the evidence, and we decline to disturb the maintenance award of $1,000 per month.

The case is remanded to the trial court for the sole purpose of entering a new decree with respect only to the military pension. As to said military pension, the decree shall provide that 32.5 percent thereof shall be paid to Bonnie, as explained above. The decree should be drafted to conform with 10 U.S.C. § 1408 (1982). The court at the same time may adopt a new timetable for the sale of the residence, since the time limited for the private sale thereof expired October 6, 1987. In all other respects, the judgment is affirmed.

All concur.