Deborah HILEMAN, Respondent/Cross–Appellant,

v.

Randy Lee HILEMAN, Appellant/Cross–Respondent.

No. 66449.

Missouri Court of Appeals, Eastern District, Division One.

March 21, 1995.

Case Transferred to Supreme Court April 20, 1995.

Case Retransferred to Court of Appeals Oct. 24, 1995.

Original Opinion Reinstated Nov. 22, 1995.

Sally Rajnoha, Ballwin, for appellant.

Bruce Hilton, Lawrence G. Gillespie, Webster Grove, for respondent.

GARY M. GAERTNER, Judge.

Appellant/Cross–Respondent, Randy Lee Hileman ("husband"), appeals from that part of a decree of legal separation issued by the Circuit Court of the County of St. Louis awarding Respondent/Cross–Appellant, Deborah Hileman ("wife"), maintenance of $800 per month. Wife cross-appeals from that part of the decree ordering her to refinance the marital home within sixty days or put it up for sale. We affirm as modified.

Husband and wife married on August 31, 1985. The couple had no children.[1] Husband and wife separated on or about November 15, 1993. Wife filed for a decree of legal separation in December of 1993. Trial was held on April 7, 1994, in St. Louis County Circuit Court.

Husband testified to the following. At the time of trial husband worked as a chemical operator for Mallinckrodt Chemical. He earned approximately $47,000 in gross pay for 1993, or a little under $4,000 per month. However, husband claimed his base pay was $32,000 to $33,000 per year; due to flooding in 1993, he was able to earn an unusually large amount of overtime pay which would not be available in a normal year. Husband had earned $6,689.66 through February 11 of 1994. According to husband, his total average monthly expenses were $1,873. This last amount included the $800 husband sent wife every month since their separation.

Husband and wife had two loans on their marital home: a mortgage with Leader Federal, for $79,000; and a home equity loan with Boatmen's Bank, for $8,709. Wife made

monthly payments of $814.19 on the mortgage to Leader Federal with the money husband sent her.[2] The home was assessed at $90,200 by the county assessor. According to husband, the home was appraised for purposes of the equity loan at $103,000, although in his opinion its value was $113,000. Husband asked that the home be sold and the proceeds split equally between he and wife.

Wife testified to the following. She was 42 years old at the time of the trial, in generally good health,[3] and a high school graduate. She had worked for Petrolite Corporation ("Petrolite") full-time for 17 years, first as a billing clerk and later as a "weigher/packer/marker" in the plant. Wife earned approximately $34,000 in 1990 and 1991, and between $28,000 and $30,000 in the preceding five years. Wife had worked and supported herself for ten years prior to meeting husband, who also worked for Petrolite.

In 1991, both husband and wife took voluntary dismissals from Petrolite upon being informed the plant was closing.[4] Prior to leaving Petrolite, wife applied for two different positions and received offers; however, she rejected both offers as they paid much less than what she was currently earning. After leaving Petrolite, wife applied for various jobs over the course of a year. Wife received one offer for a full-time position; she turned down that offer as well, as it offered lower pay ($7 per hour) than she had been earning, and no benefits. Wife collected weekly unemployment compensation during her year-long job search.

In April of 1993, wife landed a part-time position as a warehouse clerk with NARCO Medical Services ("NARCO"). At the time of trial, wife worked four hours a day, five days a week, and earned $8 per hour. Wife claimed she liked her job with NARCO and was told when hired that her position might become full-time, although her part-time status had not changed in the year she had

---

1. Husband had a teenage daughter from a previous marriage and was making weekly child support payments of $75 at the time of trial.

2. It is unclear from the record who was making the payments on the home equity loan.

3. Wife claimed she was taking medication for stress related to the trial.

4. Petrolite had not in fact closed as of the date of trial.

worked there. Wife had applied for an additional part-time position shortly before the trial to supplement her income.

Wife conceded she could not support herself working at her current part-time position, but if she worked full-time she could possibly support herself. Upon questioning by the court, wife admitted there was nothing preventing her from working full-time; she had not sought full-time employment with any other company since she started working for NARCO; and there had been no indication or offer of full-time employment from NARCO in the year she had been working there.

According to wife, her monthly expenses totaled $1,677.29. Wife testified she could not support herself on the income she was currently earning, and asked for maintenance of $1,000 per month. She also asked that she be awarded the marital home. According to wife, the appraisal value of the home was $101,000. Wife believed the marriage was not irretrievably broken and could be preserved with counseling.

On April 29, 1994, the court issued a decree of legal separation. The court made the following findings with respect to the parties' incomes and expenses. Husband earned $3,942 per month in 1993, and $4,143 per month in 1994; his average net monthly income was $2,812. Husband's total average monthly expenses were $1,873, which included the $800 he had been paying wife every month since their separation. For her part, wife's gross earnings were $6,198.38 or $517 per month in 1993, and $767 per month in 1994. Wife's reasonable average monthly expenses totaled $1,677.29.

The court awarded the following property to wife: the marital home; various items of personal property in wife's possession, i.e. furniture ($2,685 total value); one-half of the couple's approximately $4,000 in federal and state income tax refunds; a 1985 Lincoln Town Car ($1,000 value); one-half of the proceeds from a jointly-owned piece of property on Woodland Lake (valued at $2,400); a life insurance policy with $662 cash value; wife's pension from Petrolite for seventeen years' employment ($393.85 per month begin-

ning at age 65); and all checking and savings accounts in wife's possession.

The court found wife was without adequate means to support herself, while husband possessed adequate means to provide support to wife. The court also found the following:

Despite Wife's testimony that she hopes to be employed full time at NARCO ... within a year from the entry of the Decree of Legal Separation and despite that Wife was employed full time outside the home for six of the nine years of the parties' marriage, there is no evidence that establishes that there is an impending change in the financial conditions of the parties; there is no reasonable expectation that such a change will take place within the foreseeable future which would allow Wife to become self-supporting with the exception of Wife's testimony that she will be self-supporting within two years of the entry of the Decree of Legal Separation; and therefore an award of maintenance for Wife of limited duration would be inappropriate.

The court ordered husband to pay wife $800 per month "as and for periodic non-modifiable maintenance for two years, said maintenance to be subject to modification thereafter." The court's decree further ordered:

Wife shall immediately, upon Husband quit-claiming his interest in the marital residence to Wife, within sixty (60) days thereof, either refinance the current obligations or obtain subsequent financing in order to remove Husband's name from the underlying obligations to Leader Federal and the home equity loan at Boatmen's Bank. Failure of Wife to remove Husband's name from those indebtedness [sic], said house shall be sold, and the indebtedness thereon shall be paid. All net proceeds shall be retained by Wife.

Both husband and wife appealed. Their appeals were consolidated on August 23, 1994.

■ The rules enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), govern our review of this case. *See Bixler v. Bixler*, 810 S.W.2d 95, 99 (Mo.App.E.D.1991). We will sustain a decree or judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of

the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. We view the evidence in the light most favorable to the decree, disregarding contrary evidence and deferring to the trial court even if the evidence could support a different conclusion. *Bixler,* 810 S.W.2d at 99 (Mo.App.E.D. 1991). "We acknowledge the superior position of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles that are not revealed in a trial transcript." *Jones v. Jones,* 866 S.W.2d 507, 508 (Mo.App.E.D. 1993).

We first address husband's appeal, which consists of two points. For his first point, husband contends the circuit court abused its discretion in awarding wife maintenance, as she was capable of supporting herself through appropriate employment.

■ Our review of maintenance awards is extremely constrained. Maintenance awards rest within the broad discretion of the trial court; we review only for abuse of that discretion. *Jung v. Jung,* 886 S.W.2d 737, 740 (Mo.App.E.D.1994). The party challenging the maintenance award has the burden of showing an abuse of discretion. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 953 (Mo.App.E.D.1993). Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *In re Marriage of Vinson,* 839 S.W.2d 38, 43 (Mo.App.S.D. 1992).

■ In proceedings for dissolution or legal separation, a spouse seeking maintenance must meet a two-part threshold test: the spouse must (1) lack sufficient property—including marital property apportioned to him or her—to provide for his or her reasonable needs; and (2) be unable to support himself or herself through appropriate employment. RSMo § 452.335.1 (1994); *Jung,* 886 S.W.2d at 740. We will interfere with the trial court's award of maintenance only if the award is patently unwarranted or wholly beyond the means of the payor spouse. *Drikow v. Drikow,* 803 S.W.2d 122, 127 (Mo.App.E.D.1990).

■ We find the circuit court did not abuse its discretion in awarding wife maintenance. Wife was awarded no income-producing property. Her main asset, the marital home, was encumbered by two mortgages. Her current income was clearly insufficient to meet her needs. On the other hand, husband possessed the means for providing her support (and had, in fact, provided such support prior to entry of the decree).

■ However, we note a potentially problematic aspect of the maintenance award. The circuit court found no impending change in parties' financial conditions, nor any reasonable expectation such a change would occur in the future, which would enable wife to become self-supporting. Courts will not limit maintenance awards where there is uncertainty as to when the recipient spouse will become self-sufficient. *See Mueller v. Mueller,* 782 S.W.2d 445, 448 (Mo.App.E.D.1990). Such a determination should be made in a proceeding for modification of the award, upon a showing of changed circumstances. *Id.*

The problem here is that the unlimited duration of the award effectively locks wife into her part-time job. Husband will be foreclosed from a motion to modify, as he will be unable to show the necessary change in circumstances required of such a motion if wife remains at her part-time position. In fact, an award of unlimited duration will act to deter wife from seeking full-time employment, since an increase in her income would be a change in circumstances enabling husband to move for modification.

■ To resolve this dilemma, Missouri courts have imposed an affirmative duty on the recipient spouse to seek adequate employment to become self-supporting. *Bixler,* 810 S.W.2d at 99; *Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App.E.D.1993); *Siegenthaler v. Siegenthaler,* 761 S.W.2d 262, 264 (Mo.App.E.D.1988). This duty contemplates exertion of reasonable efforts to attain self-sufficiency; the spouse receiving maintenance will not be permitted to benefit from inaction. *Halliday v. Boland,* 813 S.W.2d 34, 36 (Mo.App.E.D.1991). "The failure of the

supported spouse to make a good faith effort to seek employment and achieve financial independence within a reasonable time may form the basis for modification of a maintenance award." *Markowski v. Markowski*, 736 S.W.2d 463, 466 (Mo.App.W.D.1987). Passive acceptance of support over an extended period of time without significant efforts to become self-sufficient may, *in itself*, constitute a change in circumstances justifying modification of the decree by terminating maintenance. *Hicks v. Hicks*, 798 S.W.2d 524, 527 (Mo.App.S.D.1990). *See also Weston v. Weston*, 882 S.W.2d 337, 341 (Mo.App. S.D.1994).

Thus, husband may move for modification or termination of the maintenance award, if, after a reasonable time has passed, wife has not attempted in good faith to support herself through appropriate, full-time employment. Bearing this caveat in mind, we deny husband's first point.

■ For his second point on appeal, husband contends the court's order that husband pay wife $800 per month "as and for periodic non-modifiable maintenance for two years, said maintenance to be subject to modification thereafter," misapplies the law. Husband asks that any maintenance awarded be made modifiable from the date of the decree. Wife concedes this point.

■ RSMo § 452.370 (1994) provides for modification of maintenance awards, "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Statutory maintenance proceeds from the need for reasonable support by one spouse from the other after disruption of their marriage, but only until the latter achieves self-sufficiency. *Cates v. Cates*, 819 S.W.2d 731, 734 (Mo. banc 1991). As the Supreme Court has stated:

Because maintenance is founded on need, a maintenance award may extend only so long as the need exists. As [RSMo 452.370] is cast, therefore, it would make little sense for the law to countenance a lump sum or "gross" award based on need which was not subject to modification.

*Id.* at 735. Therefore, awards of maintenance "in gross" founded on the need of the dependent spouse and intended to provide economic sustenance are no longer recognized in Missouri.[5] *Id.* at 738.

■ Here, the court awarded wife non-modifiable maintenance of $800 per month for two years, or $19,200. Such an award is tantamount to maintenance in gross and is no longer cognizable under Missouri law. *See Id.* Rule 84.14 allows this Court to render the judgment the trial court should have rendered. *Meiners v. Meiners*, 858 S.W.2d 788, 791 (Mo.App.E.D.1993). We accordingly amend the decree by excising that part making husband's maintenance obligation non-modifiable for two years. Husband's second point is granted.[6]

■ Wife's cross-appeal challenges the court's order that she either refinance the marital home and remove husband's name from the underlying obligations within sixty days, or else sell the home and pay off the mortgages. Wife suggests a two-part analysis. Wife first asserts the court lacked authority to issue this mandate. If the court did have such authority, wife then contends the court erred in ordering sale of the home without finding that the home could not be divided in kind or that such a sale would be in the best interests of the parties.

■ RSMo § 452.330 (1994) requires a just and equitable division of marital property in light of the individual circumstances of

---

5. Lump sum or "gross" awards *are* permitted as property divisions. *Cates*, 819 S.W.2d at 735.

6. Husband suggests the award be limited in duration to two years. However, such a ruling would contradict the circuit court's finding that there was no reasonable expectation of a change in wife's financial condition within two years which would enable her to become self-supporting. When it is uncertain as to when the supported spouse will obtain the earning capacity to

meet his or her reasonable economic needs, a trial court acts within its discretion in refusing to limit the duration of the maintenance award. *Siegenthaler*, 761 S.W.2d at 265; *Mueller*, 782 S.W.2d at 448. Here, the court expressly found such uncertainty existed; we will not gainsay its finding. Husband's sole recourse is to move for modification if and when wife's circumstances change, or (as stated above) wife fails to make a good-faith effort to become self-sufficient. *Id.*

the case. *Vehlewald,* 853 S.W.2d at 949. "We presume the correctness of the order prescribing the division." *Id.* Although marital debts are not marital property, the existence of such debts, and who bears responsibility for paying them, is a factor for the trial court to consider in dividing the marital property. *Id.* at 950. The trial court possesses the authority to distribute marital debts in the sense one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same. *Harry v. Harry,* 745 S.W.2d 824, 826 (Mo.App.E.D.1988).

In *Costley v. Costley,* 717 S.W.2d 540, 542 (Mo.App.S.D.1986), cited by wife, the trial court decreed that the husband obtain substitute collateral, or otherwise obtain a release, for a 40–acre tract of farm land used to secure several loans. The Southern District found this order required accession of the lender, which was beyond the power of the husband to obtain and, accordingly, beyond the authority of the trial court to order. *Id.* at 542–543. The Southern District further found:

> Nor, in this instance, is that order made proper because the husband has an alternative means of performance by payment of the indebtedness secured by the 40 acres. That alternative would compel the husband to immediately liquidate his farming assets. Considering the relevant factors, that consequence is too harsh.

*Id.* at 543. The provision was accordingly deleted from the decree. *Id.* at 545.

Wife also cites our decision in *Barth v. Barth,* 790 S.W.2d 246 (Mo.App.E.D.1990), concerning a provision of a dissolution decree awarding the husband several limited partnerships and ordering him to hold the wife harmless from any claims of indebtedness against those properties. The wife appealed this provision, requesting that the husband be solely responsible for the debt. *Id.* at 252. We refused wife's request on the ground such an order required removal of the wife's name from the promissory note, and nothing in the record showed that the

lender agreed to delete the wife's name from the note or was ever a party to the proceeding. *Id.* As in *Costley,* the only alternative to the proposed disposition of the marital debt was to sell the encumbered property, an alternative unavailable under the circumstances. *See id.*

Here, unlike *Costley* and *Barth,* the alternative of selling the encumbered property and paying off the indebtedness *is* feasible under the circumstances. The option of selling the marital home is not beyond wife's power to exercise. Nor is it unduly harsh, in light of the fact wife would not be liquidating income-producing property (unlike *Costley* and *Barth*); further, wife would retain all net proceeds.[7] In awarding wife the home but ordering her to refinance or sell it within sixty days, the circuit court was in actuality giving wife an incentive to find full-time employment if she wants to keep the home, since it is unlikely wife will be able to refinance the mortgages while working part-time. We find the court acted within its authority in issuing this order.

█ Wife also asserts the part of the decree ordering her to sell the home if she fails to refinance it is unsupported by substantial evidence, because the court did not make the requisite findings to warrant such an order. A court should make the following findings before ordering a sale of marital property: (1) the property cannot be divided in kind, and (2) a sale would be in the best interest of one or both parties. *Breda v. Breda,* 788 S.W.2d 769, 771 (Mo.App.E.D. 1990). These findings must be based upon a sufficient evidentiary foundation. *Id.*

█ Here, upon her request, the circuit court vested ownership of the marital home in wife. In return, she was to remove husband's name from the underlying obligations. If wife cannot do so, it is clear the home will not be divisible in kind. Division of marital real estate is problematic, especially if the property is encumbered by a lien; any division must be done cautiously. *See In re Marriage of Usrey,* 781 S.W.2d 556, 561 (Mo.

en by wife.

---

7. The mortgages total $87,709; the home's appraisal value is at least $101,000—the value giv-

App.S.D.1989); *In re Marriage of Wilson*, 727 S.W.2d 226, 228 (Mo.App.S.D.1987). Here, due to the limited assets of the couple, there was no way the court could have awarded wife the entire interest in the real estate and offset that by awarding husband other marital property of commensurate value. *See Usrey*, 781 S.W.2d at 561. Nor, in light of wife's minimal income, was the alternative of awarding husband a cash allowance in lieu of his half of the home available. *See Wilson*, 727 S.W.2d at 228. The record supports a finding that the marital home was not susceptible to being divided in kind.

Furthermore, the evidence supports a finding that sale of the home would be in the best interests of the parties, if wife cannot obtain refinancing of the mortgages. A sale would enable the parties to pay off their indebtedness; as it stands now, husband is unable to obtain a mortgage of his own due to his liability on the two mortgages at issue. In addition, the evidence shows such a sale would result in a net profit of at least $13,000, all of which would go to wife. *Contra Wilson*, 727 S.W.2d at 227 (Mo.App.S.D. 1987). When taken into account with the maintenance awarded her, it is clear wife will not be forced to consume her share of the marital property for housing and living expenses. *Contra In re Marriage of Goodding*, 677 S.W.2d 332, 336 (Mo.App.W.D.1984). The judicial tendency to discourage the sale of the residence of children born of the marriage does not apply here. *See Fairchild v. Fairchild*, 747 S.W.2d 641, 642 (Mo.App.W.D. 1988). Also, it is the policy of Missouri courts to encourage the final division of the parties' property and thereby avoid continuing co-ownership, which can cause conflict. *Id.* at 643.

We find no error in the court's order that the marital home be sold if wife fails to obtain refinancing of the mortgages. Wife's point on cross-appeal is denied.

The decree of legal separation issued by the St. Louis County Circuit Court is amended so husband's maintenance obligation is modifiable from the date of the decree. We affirm the decree in all other respects.

REINHARD, P.J., concurs.

CRAHAN, J., concurs in part and dissents in part in separate opinion.

CRAHAN, Judge, concurring in part and dissenting in part.

I concur in the majority opinion except insofar as it affirms the award of $800.00 per month maintenance to Wife.

The trial court made no finding that Wife was *unable* to support herself through appropriate employment; it merely found that she was without adequate means. Wife supported herself for a number of years prior to the marriage and continued to work during the marriage, earning in excess of $30,000.00 per year in her last year of full-time employment. Because the plant where she had been working was going to be closed, she terminated her employment voluntarily in order to obtain severance benefits. She then collected unemployment for a year while she looked for work. She did not apply at a number of firms that might be expected to have similar work available. She was offered at least two full-time positions which she rejected for various reasons.

In response to questions from the court, Wife testified that approximately one year prior to trial she obtained a part-time position at NARCO working in the warehouse for $8.00 per hour. She works from 10:30 a.m. to 3:00 p.m. for a total of 20 hours per week. Although she was told when she was hired that the job could turn into a full-time position, there had been no indication or offer of full-time employment during the year she had worked there. Since Wife began working at NARCO, she had not looked elsewhere for full-time employment. She had recently interviewed for another part-time job. In response to the court's question, "Is there anything to keep you from working full-time at this time?" Wife replied "No, sir."

There is no issue of credibility here. The issue is whether an able-bodied woman with a strong work history who works part-time and fails even to look for full-time work for a full year is entitled to an award of maintenance that does not impute to her some minimum level of earnings that could be gained from full-time employment. I cannot

imagine that we would affirm an award that did not impute full-time earnings to Husband if the situation were reversed.

The majority sets forth in full the trial court's findings as to why an award of maintenance of limited duration would be inappropriate. Opn. at 678. The trial court is certainly correct that "there is no evidence that establishes that there is an impending change in the financial circumstances of the parties." That is the problem! Wife testified that she "loves" her part-time job at NARCO and had not even looked for full-time work in the year she has been employed there. The award of maintenance, which imputes no additional income to Wife, effectively eliminates any incentive for Wife to do anything to improve her situation. Thus, the situation is indeed unlikely to change anytime in the near future.

The clear effect of the decree is to sanction Wife's decision to continue working only 20 hours per week at a job that holds no definite prospect of full-time employment in the near future when the consequence of that choice is in effect to saddle Husband with payments on the home awarded to Wife that she could not otherwise afford.[1] In my view, this is squarely in conflict with the mandate of § 452.335.1 RSMo 1994 that a spouse seeking maintenance demonstrate *both* an inability to provide for her reasonable needs *and* an *inability* to support herself through appropriate employment.

I do not dispute the majority's holding that Wife's failure to take steps to secure full-time employment within a "reasonable" time can support a motion to modify. But the cases cited in support of that doctrine are distinguishable because in each of those cases there was a basis, such as the need to care for young children, or long absence from the workforce, or the need to obtain retraining that justified the entry of an original decree which did not impute income to the non-working spouse in fashioning the maintenance award. The cases relied upon by the majority thus establish that when the conditions which led the court not to impute income in computing the original maintenance award are no longer present, a spouse's failure to seek employment can be considered a change in circumstances justifying a reduction in maintenance by imputing income the spouse is capable of earning through employment. The cases do not suggest that it is appropriate not to impute income to a spouse who plainly is capable of working full-time at the time of the original decree but has elected instead to work part-time and not to seek full-time employment.

I would hold that the trial court abused its discretion and misapplied the law in failing to impute full-time earnings to Wife in calculating the maintenance award. Accordingly, I would reverse and remand the maintenance award with directions to recalculate the award after imputation of full-time earnings.

---

1. The monthly house payment is $818.00; the monthly maintenance payment is $800.00.