Chiquita H. **HANDY**, Respondent,

v.

Kevin L. **HANDY**, Appellant.

No. WD 71888.

Missouri Court of Appeals, Western District.

April 12, 2011.

Chiquita H. Handy, Phoenix, AZ, pro se.

M. Corinne Corley, Kansas City, MO, for Appellant.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is a dissolution of marriage case. The issues are whether the trial court abused its discretion in ordering the marital home sold, finding that the marital home was worth $135,000, denying the husband's motion to reopen the evidence on the issue of the home's value, and/or ordering the husband to pay maintenance in the amount of $600 per month. We hold that the trial court abused its discretion in ordering the sale of the marital home. The trial court acted within its discretion in all other respects. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural Background[1]

■ The trial court dissolved the marriage of Appellant Kevin Handy ("Husband") and Respondent Chiquita Handy ("Wife"). The parties agreed that their only minor child ("Daughter") would continue to reside with Husband and that Wife would pay no child support. The only aspects of the dissolution that are relevant to this appeal are the court's treatment of the marital home and the court's maintenance award.

Wife testified that she believed the house to be worth $147,000. She based her opinion on an alleged appraisal which was purportedly done the previous year.[2] Husband testified that he believed the home to be worth less than $107,000 (the principal balance on the mortgage). Husband testified that he thought that the home had depreciated based on his observations of the housing market. Two months after the evidence had closed (and after the court had announced its judgment to the parties), but before the court had entered judgment, Husband filed a motion to reopen the evidence to submit a current appraisal of the home. Husband alleged that a new appraisal valued the home at $121,000. Husband had testified at trial regarding his plan to refinance the home to reduce his monthly mortgage payments. He argued in his motion to reopen the evidence that the trial court should allow him to refinance the home at

---

1. On appeal from a judgment that dissolved a marriage, we view the facts in the light most favorable to the judgment. *Pickering v. Pickering*, 314 S.W.3d 822, 829 (Mo.App. W.D. 2010).

2. The appraisal itself was excluded as hearsay.

$121,000 and pay off certain marital debts with the proceeds of the new loan.

Husband also argued that it was in the best interests of Daughter to continue to reside in the marital home and that Wife could be compensated for her share of the equity in the home via a greater award of other marital property. For example, the marital unit possessed a "Thrift Savings Plan" which the court valued at approximately $79,000. To pay marital debt, the parties had secured a loan with the Thrift Savings Plan, and they still owed $15,568.88 on that loan. Thus, the Thrift Savings Plan had a net value to the marital unit of approximately $63,500.[3]

The trial court denied the motion to reopen the evidence and ordered Husband to sell the home, pay certain marital debts (totaling $10,927 at the time of the decree), as well as costs of closing and commissions with the proceeds, and split the remaining proceeds, if any, with Wife. The court also found that the home had a fair market value of $135,000 and ordered Husband to place it on the market at that price. Other marital debts were divided between the parties, with Wife being assigned $4,590 in debt and Husband being assigned $7,000 in debt.

The court valued the Thrift Savings Plan at $79,000 and divided the plan assets between the parties with Husband receiving 60 percent ($47,400) and Wife receiving 40 percent ($31,600). Husband was made responsible for repayment of the $15,568.88 loan secured by the plan, which resulted in the parties receiving an approximately equal equitable share of the plan.

Relevant to the issue of maintenance, the trial court found that Wife incurred $1,946 per month in reasonable monthly expenses. The court derived that figure by taking Wife's income and expense statement, which listed monthly expenses of $2,629 per month, and (1) eliminating payments associated with her car (which she had sold); (2) lowering her monthly telephone expenses to $50; and (3) eliminating her expenses for cable television.

At the time of trial, Wife was unemployed, but she testified that, in the past, her employment had included: working at fast-food restaurants, giving care to disabled persons, bartending, and doing laundry. Wife testified that she had difficulty keeping those jobs due to her medical conditions. Wife also testified that she received various forms of governmental aid, totaling approximately $732 per month.

Despite Wife's unemployment, the court imputed $611 of monthly employment income to her. The court derived that figure by concluding that Wife was capable of working 20 hours a week at $7.05 per hour. The court also found that Wife received $739 per month in governmental assistance. The court then added the amount Wife receives in governmental assistance to the amount of employment income the court imputed to her to arrive at its finding that Wife's total imputed income was $1,350 per month.

Subtracting the amount of Wife's total imputed monthly income ($1,350) from the amount of Wife's monthly reasonable needs ($1,946), the court found a deficiency of $596 per month.

Husband testified that, if he were awarded a share of the Thrift Savings Plan and if he refinanced his home, which would reduce his mortgage payment from $1,420 per month to approximately $950 per

---

**3.** The net value of the Thrift Savings Plan and the equity in the marital home were the only significant marital assets.

month, he would be able to pay off the marital consumer debts and meet his and Daughter's needs going forward. However, contrary to this assertion, Husband also testified that, even by limiting his expenses going forward (as suggested above), his expenses would exceed his income. Husband claimed expenses of approximately $3,198.85 [4] per month, and take-home income of approximately $2,834.88 per month.

The court found that Husband was capable of paying Wife $600 per month while meeting his own needs. That result was possible, the court found, because the court was ordering Husband to sell the marital home, and therefore Husband would no longer have to pay the mortgage. The court made no other findings regarding Husband's expenses. The court then ordered Husband to pay Wife $600 per month in maintenance.

Husband filed a motion to amend the judgment, arguing, among other things, that the trial court had failed to find that an in-kind division of the marital home was infeasible, and therefore a court-ordered sale of the home was improper. The trial court denied the motion. Husband appeals.

### Standard of Review

■ As in all bench-tried cases, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) governs our standard of review. *In re Marriage of Accurso*, 234 S.W.3d 556, 557 (Mo.App. W.D.2007). Accordingly, we will affirm the trial court's judgment unless (1) there is no substantial evidence to support it; (2) it is against the weight of

the evidence; (3) it misstates the law; or (4) it misapplies the law. *Murphy*, 536 S.W.2d at 32; *Accurso*, 234 S.W.3d at 557. However, on the specific issue of whether the court properly divided the parties' marital assets, we will reverse only when the trial court abused its discretion. *Accurso*, 234 S.W.3d at 557. Likewise, we will not reverse the trial court's maintenance award unless it abused its discretion, *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001), and the same is true with respect to the trial court's denial of a motion to reopen the evidence. *Foster v. Village of Brownington*, 76 S.W.3d 281, 287 (Mo.App. W.D.2002).

### Legal Analysis

### I. Forced Sale of the Marital Home

■ Husband argues that the trial court abused its discretion in ordering him to sell the marital home in that the court could have awarded Wife the value of her equity interest in the home without ordering a sale. We agree.

"In a proceeding for dissolution of the marriage ... the court ... shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors." § 452.330.[5]

■ The trial court has substantial discretion in dividing marital property. *Galloway v. Galloway*, 122 S.W.3d 705, 707 (Mo.App. E.D.2003). Nevertheless, "a sale [of marital property] should be ordered *only* as a final alternative when *no* other *possibility* can be devised." *Id.* (emphasis

---

4. This number is based on total monthly expenses reported in Husband's income and expense statement reduced by a presumed reduction in the monthly mortgage payment as a result of refinancing ($470), and the elimination of monthly payments for consumer debt ($740), the loan payment secured by

the Thrift Savings Plan ($190) and legal fees ($1,000).

5. Statutory references are to RSMo 2000, as updated through the 2010 cumulative supplement.

added). In general, in order for the court to properly order a sale of marital property, it must find that (1) an in-kind division of the property is infeasible; and (2) a forced sale is in the interest of at least one party. *Id.* There must be an evidentiary basis for these findings. *Id.*; *Parker v. Parker*, 744 S.W.2d 469, 471 (Mo.App. W.D.1987). Moreover, when the property sought to be sold is the home of the custodial parent and the minor child, "courts should also consider the judicial reluctance to uproot the custodial parent and unemancipated children residing there." *Chambers v. Chambers*, 910 S.W.2d 780, 785 (Mo.App. E.D.1995).

An "in-kind" division occurs when the court awards each party his or her interest in marital property without ordering a cash payment. 24 Am.Jur.2d DIVORCE AND SEPARATION § 532 (2008). To achieve an in-kind division, the court can partition the subject property, with a tract of approximately equal value going to each spouse, *see Farmer v. Farmer*, 821 S.W.2d 911, 912 (Mo.App. S.D. 1992); or it can set aside the marital home to one spouse while awarding the other spouse other marital property of commensurate value. *See Galloway*, 122 S.W.3d at 707–08. In short, "if it is possible to award one spouse the real estate in its entirety and offset that award by giving the other spouse different marital property of approximately equal value, then the real estate need not be sold." *Galloway*, 122 S.W.3d at 707–08.

However, dividing the marital home in kind must be done with caution, particularly when it is encumbered by a mortgage or a deed of trust. *See Farmer*, 821 S.W.2d at 913. Indeed, if it is impossible to refinance a mortgage so that only one spouse is responsible for the debt, then it may be impractical to divide the property in kind. *See Hileman v. Hileman*, 909 S.W.2d 675, 681 (Mo.App. E.D.1995) ("If wife cannot [remove husband's name from the underlying obligations], it is clear the home will not be divisible in kind."); *but see Farmer*, 821 S.W.2d at 913 (suggesting various other alternatives). If the mortgagee or lender does not consent to removing one spouse from the mortgage or deed of trust, the court may find that the encumbered property is not divisible. *See Hileman*, 909 S.W.2d at 681.

In this case, the record suggests that it was possible to award one spouse the marital home and offset that award by giving the other spouse other marital property of commensurate value. *Cf. Galloway*, 122 S.W.3d at 707–08. The two primary assets of the marital unit are (1) the equity in the Thrift Savings Plan, which had a value of $79,000 and which served as security for a loan with $15,568.88 still owed; and (2) the equity in the home, which the court valued at $135,000 and which was subject to a mortgage securing a loan with approximately $107,000 still owed. The equity in these two marital assets was thus worth approximately $91,500, about $63,500 from the plan and about $28,000 from the home. Under these circumstances, an in-kind distribution of the marital equity was feasible, and therefore the trial court erred in ordering the home sold. *See id.*

In short, a forced sale of the custodial parent's home should be a last resort, *see id.* at 708; *Chambers*, 910 S.W.2d at 785; and the record here does not show that other alternatives were infeasible. The trial court ordered the sale of the marital home, not because the marital property could not be divided in kind, but to facilitate the payment of maintenance. In other words, it appears that the trial court concluded Husband could not afford to pay the mortgage while simultaneously making the maintenance payments that the court found to be appropriate. For that reason,

the trial court ordered the sale of the marital home. We find this rationale to be faulty.

As discussed in point III, *infra*, in deciding whether to award maintenance, the trial court must consider several relevant factors, including the ability of the payor spouse to meet his reasonable needs while meeting those of the payee spouse. § 452.335.2(8). The desire on the part of the payor spouse to continue to reside in the marital home cannot artificially increase the cost of the payor spouse's reasonable needs so as to defeat an award of maintenance. Nor can the court's award of maintenance render infeasible an in-kind division of property that is otherwise possible. It is the role of the trial court to determine what the reasonable needs of the payor spouse are, and if other relevant factors are met, to award the appropriate maintenance. It is also the role of the trial court to order that marital property be divided in kind if such a division is feasible. If the award of maintenance and the division of marital property leaves the payor spouse with burdensome financial obligations, it is the duty of the payor spouse, not the court, to determine how best to meet those obligations. Point granted.[6]

## II. Valuation of the Marital Home and Denial of the Motion to Reopen Evidence

▇▇▇ Husband argues that the trial court erred in valuing the home at $135,000 and that the court should have reopened the evidence to accept an alleged appraisal of the home that occurred after trial. We disagree.

▇▇▇ The trial court has substantial discretion both in valuing marital property, *Sharrai v. Sharrai*, 322 S.W.3d 641, 646 (Mo.App. W.D.2010), and in ruling upon a motion to reopen evidence. *Foster*, 76 S.W.3d at 287. The court should base its valuation of marital property on its value at the time of trial or its value at the approximate time the property will actually be divided. *Galloway*, 122 S.W.3d at 708–09.

Here, the only evidence submitted at trial was the testimony of the two parties, Husband valuing the home at less than $107,000 and Wife valuing it at $147,000. It is well settled that a spouse's opinion regarding the value of marital property is competent evidence upon which the trial court may base its valuation. *Sharrai*, 322 S.W.3d at 646. Husband testified that he based his opinion on his observations of the housing market, and Wife testified that she based her opinion on an appraisal done the previous year. From this evidence, it cannot be said that the trial court abused its discretion in valuing the home in between the two estimates: $135,000.

▇▇▇ Moreover, Husband waited until two months after trial—and after the court had announced its judgment—to file his motion to reopen the evidence. Courts cannot be expected to reopen evidence when a party had an ample opportunity to present evidence on an issue but later had a change of heart regarding what evidence should have been presented. *Forney v. Mo. Bridge & Concrete, Inc.*, 112 S.W.3d 471, 475–76 (Mo.App. W.D.2003). Husband cites no reason why he could not have commissioned an appraisal and presented it at trial. Only after he learned of

6. On remand the trial court may order Husband to refinance the home by a date certain in order to facilitate the repayment of marital debts and to relieve Wife of any responsibility for the mortgage debt. If Husband cannot obtain refinancing, the sale of the home may become necessary. *See Hileman*, 909 S.W.2d at 681–82 (holding that the trial court did not err in ordering Wife to refinance the home by a certain date or to sell the house).

the court's valuation did Husband decide that an appraisal was a crucial piece of evidence. Under these circumstances, the court was not obligated to give Husband a second bite at the apple. *See id.*

Thus, the court was within its discretion in valuing the marital home based on the evidence before it and in denying Husband's motion to reopen the evidence. Points denied.[7]

### III. Maintenance Award

Husband argues that the trial court erred in awarding maintenance in that there was no substantial evidence that Wife had a need for maintenance and/or that there was no substantial evidence that he had an ability to pay maintenance. We disagree.

Before awarding maintenance, the trial court must first find that the spouse seeking support lacks the ability to provide for her own reasonable needs, whether via property or through future employment. § 452.335.1; *Dowell v. Dowell,* 203 S.W.3d 271, 285 (Mo.App. W.D.2006). Assuming that step has been met, the court then must consider several relevant factors. § 452.335.2. Among these is the ability of the payor spouse to meet his reasonable needs while meeting those of the payee spouse. § 452.335.2(8). The trial court must balance the payee spouse's need for maintenance against the payor's ability to pay, and "[a]n award of maintenance should not exceed the paying spouse's capacity to provide." *Griffin v. Griffin,* 986 S.W.2d 534, 538 (Mo.App. W.D.1999). The burden is on the spouse seeking maintenance to establish these elements. *Sharrai,* 322 S.W.3d at 644.

#### a. Wife's need for maintenance

■ Husband argues that the trial court erred in calculating the amount of Wife's reasonable needs in that there was no substantial evidence that she incurred legitimate expenses of $1,946 per month. We disagree.

There was substantial evidence to support the trial court's finding that it would cost $1,946 per month to meet Wife's reasonable needs. On this point, the court relied upon Wife's income and expense statement. "Such statements can serve as substantial evidence to support a finding of reasonable needs or expenses." *Cohen v. Cohen,* 73 S.W.3d 39, 50 (Mo.App. W.D. 2002). Husband cites us to nothing in the record to cast doubt upon the validity of the expenses cited in that document. Thus, given the unchallenged evidence in the record, the trial court's findings are supported by substantial evidence.[8]

Husband argues that there was no substantial evidence to support the trial court's determination that it would cost $1,946 per month to meet Wife's reasonable needs in that Wife stated in her trial brief that she could reduce the cost of meeting her monthly needs to $1,411 per month. However, Husband's citation to that portion of Wife's trial brief is misleading: in the very next paragraph, Wife stated that her medical costs would also increase, and thus her "lowered monthly needs are $1,411 plus $400 = $1,811." It is true that Wife's calculation in her trial brief ($1,811) is slightly less than the trial court's ultimate calculation ($1,946). Nevertheless, Wife's statement in her *trial*

---

7. We note that, in light of the fact that we are remanding and that the trial court's decision establishing the value of the house and ordering it sold were intertwined, the trial court has the discretion but not the obligation to revisit this issue.

8. We also note that the court eliminated any expense related to an automobile or television.

*brief* is not conclusive because, as stated above, substantial evidence adduced in the *trial itself* supported the court's findings. Our standard of review mandates that we view the evidence in a way that favors the judgment and that we ignore contrary evidence. *Simpson v. Strong*, 234 S.W.3d 567, 570 (Mo.App. S.D.2007). Moreover, even if we accepted Wife's statement in her trial brief as conclusive (which we do not), such a slight increase satisfies the substantial evidence standard because a spouse's needs can be expected to vary slightly over time. *See Ross v. Ross (In re Marriage of Ross)*, 231 S.W.3d 877, 886 (Mo.App. S.D.2007).

Thus, substantial evidence supported the trial court's calculation of Wife's reasonable needs. Point denied.

### b. Husband's ability to pay

■■■ Husband argues that the trial court erred in awarding Wife $600 per month in maintenance in that there was no substantial evidence that he could pay that amount while meeting his own reasonable needs. We disagree.

We first note that, in his motion to amend the judgment, Husband failed to cite the judgment's failure to make specific findings regarding his ability to meet his own needs. Accordingly, that aspect of his point on appeal has been waived, Rule 78.07(c), and we will affirm the judgment on this point so long as it was supported by substantial evidence. *See Wallace v. Wallace*, 839 S.W.2d 354, 358 (Mo.App. W.D.1992).

The trial court's conclusion that Husband could meet his own reasonable needs plus $600 in monthly maintenance was supported by substantial evidence. Husband presented evidence that, going forward, his net income would be $2,834.88 per month. Husband claimed that his reasonable expenses totaled $3,198.85; however, the trial court had the discretion to find that Husband lacked credibility, *see, e.g., Howery v. Howery*, 320 S.W.3d 742, 747 (Mo. App. W.D.2010), and the court was not required to accept all of Husband's claimed expenses as reasonable. *See Pickering v. Pickering*, 314 S.W.3d 822, 831 (Mo.App. W.D.2010).

For example, the court evidently found that Husband's reasonable needs could be met with less expensive housing, for it ordered Husband to sell the marital home. As explained above, the court erred in going so far as to order Husband to sell his home; however, that does not mean that the court was required to accept that, given Husband's income, the mortgage payments were reasonable for purposes of determining his ability to pay maintenance.[9] If the law were otherwise, spouses could inflate their expenses before trial in an effort to avoid a maintenance obligation. *See Russum v. Russum*, 214 S.W.3d 376, 383 (Mo.App. W.D.2007) (holding that the trial court was free to believe that the husband inflated his expenses in an effort to avoid maintenance).

Nor was the court required to find all of Husband's other expenses to be reasonable. Since Husband did not request specific findings on this point in his motion to amend the judgment, we do not know which of Husband's expenses the court deemed to be unreasonable. Suffice it to say, however, that it does not shock the sense of justice to find that Husband could provide for his reasonable needs with $2,234.88 per month (his net income less $600). *Cf. Pickering*, 314 S.W.3d at 831

---

9. We recognize that retaining the home may be difficult for Husband under these circumstances. However, for the reasons stated *su-* *pra*, discretion lies with Husband, not the trial court, to decide the *manner* in which he is to meet his obligations.

(holding that the trial court did not abuse its discretion in discrediting Husband's claim that either $2,474 or $3,023 per month was insufficient to meet his reasonable needs).

Thus, there was substantial evidence to support both the finding of Wife's need for maintenance and Husband's ability to pay it. Point denied.[10]

### Conclusion

The trial court abused its discretion in ordering Husband to sell the marital home in that the marital property was divisible in kind. The court was within its discretion in valuing the marital home, denying the motion to reopen evidence, and ordering Husband to pay $600 per month in maintenance. Accordingly, the trial court's judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.

---

**10.** We note that the court seems to have premised its ruling on the maintenance issue on the erroneous belief that a forced sale of the marital home was proper. For the reasons stated, the trial court had the discretion to award maintenance irrespective of whether Husband sells the home. However, given that the court obviously viewed these issues as related, the court has the discretion but not the obligation to revisit the maintenance issue on remand.